**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case Number: 21-cr-00031(TSC)** |
| **JAMI BAILEY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO MODIFICATION OF**
**CONDITIONS OF RELEASE FOR DEFENDANT JAMI BAILEY**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its opposition to the Defendant's request to modify the conditions of his release.  The Defendant stands before the Court charged with the Possession of Child Pornography, in violation of Title 18 U.S.C. § 2252(a)(4)(B), on or about and between October 1, 2016 and May 25, 2017.  As such, this is a case that involves a minor victim.  While not statutorily required pursuant to Title 18 U.S.C. §3142, the Government requests that this Court impose the electronic monitoring conditioning, as well as the other conditions requested by Pretrial Services in the Report filed with the Court on February 16, 2021.  *See* Dkt. No. 4.  As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142(g) leads to the conclusion that these conditions of release are necessary in order to ensure the safety of any other person and the community.

## APPLICABLE LEGAL STANDARD

Even if the defendant does not pose a flight risk, danger to the community by itself is sufficient reason to order detention and/or to impose various conditions of release. *United States v. Salerno*, 481 U.S. 739, 755 (1987).   In determining whether there are conditions of release that will ensure the safety of any other person and the community, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

### I.      Analysis

For the reasons that follow, the Government submits that electronic monitoring, no access to electronic devices that are capable of connecting to the Internet, and the other conditions of release as detailed in the Pretrial Services Report are necessary to reasonably assure the safety of any other person and the community.

### A.      Nature and Circumstances of the Charged Offense

On various dates between October 2016 and April 2017, Online Covert Employees ("OCEs") employed by the Washington Field Office of the FBI used a law enforcement tool to review a list of Internet Protocol ("IP") addresses that (1) had been recorded as sharing suspected child pornography images or videos, identified by their unique Infohash values,[1] on a peer-to-peer ("P2P") file sharing network; and (2) were believed to resolve back to physical addresses located in the District of Columbia based on a commercial geolocation program utilized by the law

---

[1] An "infohash" is a number which uniquely identifies a torrent file based on the shared file(s) associated within the torrent file.

enforcement tool.  An IP address is unique to a particular computer during an online session and makes it possible for data to be transferred directly between computers.  The law enforcement tool indicated that the IP address 73.128.73.45, later identified as being utilized by the Defendant, had been used to share known or suspected child pornography images and/or videos and that the computer using that IP address was physically located in the District of Columbia.

Over the course of six months, the OCEs initiated single source downloads from the Defendant's IP address and obtained several files.  A description of some of these files follows:

(1) A file identified as "Mandy 8yo.avi" that contains a video depicting a prepubescent girl with her mouth on the penis of an adult male.  In portions of the video, the adult man can be seen rubbing his penis against the child's vagina.  The adult man then ejaculates onto the child's chest.

(2) A file identified as "pthc[2] Pedoland Frifam Viola 4-Foxy-Stop dont stop 012.avi," which is a video file depicting an adult man and a prepubescent minor female rubbing a vibrator against the child's vagina.  The adult man then attempts to insert the vibrator into the child's anus.

(3) A file identified as "_zooskool- PTHC –BabyJ 5yo Exib Fuck (48m58s)(1).mpg" that contains a video depicting various scenes of a prepubescent minor female digitally penetrating herself.  The video also shows an adult man inserting his penis into the child's vagina.

The investigation conducted by members of the Washington Field Office of the FBI was not the first time that the Defendant had come across law enforcement's radar for distributing child

---

[2] Pthc is a term that means pre-teen hard core.

pornography.  The Defendant was known to law enforcement because, on numerous dates in 2015, an OCE using the same P2P software client mentioned above downloaded images depicting child pornography from an IP address that law enforcement determined was associated with the Defendant.  At that time, the Defendant was residing in The Eastern District of Virginia. Unfortunately, the Defendant moved from his home in Virginia before a search warrant for that residence could be obtained.

On May 25, 2017, a search warrant issued by a magistrate judge from the United States District Court for the District of Columbia was executed at the Defendant's residence in the District of Columbia.  As a result of the search warrant, several computers, hard drives, and phones (hereinafter, "digital devices") were seized. Furthermore, a 9 mm Sig Sauer and a 22 mm Ruger were also recovered.  The Defendant admitted that these were his firearms, and that they were not registered in the District of Columbia.  As a result, the Defendant was arrested for the possession of unregistered firearms on that date.[3]

The digital devices seized pursuant to the search warrant were forensically examined. Several of the seized items contained images depicting child pornography or forensic artifacts consistent with an individual searching for child pornography.  For example, child pornography was found on two different MacBook laptops belonging to the Defendant.  Additionally, several search terms indicative of child pornography, including "pthc"[4] and "pedo," were located in the "Google Searches" tab of these devices.  Furthermore, the "Parsed Search Queries" tab contained additional searches for the terms "6yo", "12yo" and "preteen".  The "WebKit Browser Web

---

[3] There are no pending charges against the Defendant for the illegal possession of these firearms.

[4] This term is commonly used when individuals, who have a sexual interest in children, refer to child pornography.  It means pre-teen hard core.

4

History" tab listed torrent file names indicative of child pornography, including "(pthc).8yo.boy.fucks.6yo.girl,she.cries.for.mom."

The Defendant's iPhone contained approximately 1,052 images consistent with child pornography which, based on the file structure, appear to have been downloaded from various websites.  This iPhone is associated with the Apple ID jamiabailey@gmail.com, and has the owner name "Jami's iPhone."  The Defendant used this device to actively seek out images and videos of child pornography, searching using terms including: "ptsc lola preteen", loli child model", preteen nonnude", "ptsc young lola", "candid preteen" and "preteen see thru shirt".  Additionally, a Dell laptop found at the Defendant's home contained approximately 1,077 images and 132 videos depicting the sexual abuse of children.  While most of the images and videos were recovered from unallocated space,[5] some were located in the file structure: "[root]/Users/jamia/AppData/Google/Chrome/User Data/".  This item had one identifiable user account named "jamia", with the display name "Jami Bailey."  P2P software was also installed on the computer.   Furthermore, dozens of files that had been downloaded during the undercover sessions described above were located on this device.  Examples of some of these files include:

(1) A file entitled _hr_tiny_girl005," which is an image depicting a toddler, nude from the waist down, with an adult penis pressed against her vagina.

(2) Files entitled "0be5680d" and "0be5680e," which are images depicting a toddler with an adult male penis placed in her mouth.

---

[5] Unallocated space on digital media is where deleted items remain unless or until they are overwritten by new data.  Files in unallocated space are recoverable when computers are forensically examined.

(3) A file entitled "8d763034," which is an image depicting an adult male with his tongue on a toddler's vagina.

The Defendant's criminal conduct, which spanned for many months, is extremely serious and supports the conditions of release suggested by Pretrial Services. His conduct is egregious, and his offenses have been perpetrated against the most vulnerable members of our society: children. Children depicted in images and videos depicting their sexual abuse are traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized and re-traumatized each and every time an individual, like the Defendant, views the images for their own sexual gratification. As recently explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.

> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

As such, the Court should impose electronic monitoring, deny him access to electronic devices that facilitate the serious criminal offenses he is charged with perpetrating, as well as

order the various conditions of release as recommended in the PreTrial Services Report. *See* Dkt. No. 4, page 1.

**B. The Weight of the Evidence Against the Defendant**

The weight of the evidence against the Defendant is overwhelming.  As detailed above, the Government is in possession of numerous digital devices that have been forensically analyzed and which corroborate the fact that the Defendant was using various computers and cellular telephones to search for, access, download, and view images and videos that depict the graphic sexual assault of children as young as infants.  Furthermore, the evidence shows that the Defendant was using these devices and the Internet to make his collection of child sexual abuse material available to other like-minded offenders.   Based upon the above, as the weight of the evidence against this Defendant is quite strong, this factor also weighs heavily in favor of imposing the conditions of release the Government is requesting.

**C.       History and Characteristics of the Defendant**

The Defendant has two prior contacts with the criminal justice system.  He has an Assault conviction from 2012, and a Disorderly Conduct conviction from 2010.  While the charge that the Defendant pled to in 2010 may not seem serious, the conduct underlying that conviction is deeply disturbing.   The victim in that case was a high school intern at the company where the Defendant was working.  Over the course of the internship, the Defendant repeatedly touched the teenage intern in ways that made her uncomfortable.  The Defendant would put his arms around the young girl, and on one occasion placed his hand on her thigh, and slowly moved his hand up her leg.  The Defendant also asked the intern questions about her personal life, including whether or not she had a boyfriend, and told her that she was very pretty.

While this conviction is somewhat remote in time, it is disturbing because the victim in that offense was also a minor, which exacerbates the Government's concern that this Defendant

7

poses a danger to members of the community- specifically, children.  The Government disagrees with defense counsel's assertion that there is no reason to believe that the Defendant has viewed child pornography following the execution of the search warrant in May 2017.  *See* Defendant's Motion, Dkt. No. 6, pages 8-9.  The fact that the Defendant lacks a subsequent arrest for this type of conduct does not mean that he has not engaged in additional offenses involving the online exploitation of children.  This Court is well aware that the online sexual exploitation of children, such as the distribution and possession of child pornography, are crimes that are committed in secret.  This secrecy, combined with the overwhelming presence of digital devices and the near universal access to the internet, makes detection of these criminal offenses difficult.  As this case demonstrates, the Defendant was utilizing the Internet to and P2P software to seek out, view, collect, possess and distribute images depicting the sexual abuse of children for approximately two years before law enforcement executed a search warrant at his residence.

The mere lack of an arrest record for these types of offenses should also be called into question in cases involving the sexual exploitation and abuse of children, because it is well-known that children often do not disclose sexual abuse, and that these types of crimes are wildly underreported.  *See United States v. Gregory Todd Numan*, 3:160cr000065(TMB)(DAK)(February 26, 2018:  Expert Testimony of Clinical Psychologist Darrell Turner).  In *Numan*, Dr. Turner provided expert testimony to the Court to explain why a reliance on the lack of prior criminal history of an offender charged with sexual offenses committed against children does not serve as a reliable indicator of their future risk for reoffending.  As explained by Dr. Turner:

> "One of the main problems is the fact that these offenses
> are among the most undetected offenses that there are. This
> is not like bank robbery or murder, where it's generally assumed
> and expected that it's going to be detected and reported. We know

from research that about only about five percent of sexual offenses against
children are ever reported.

Of those, of that five percent, about another five percent
result in a conviction. So we're talking about an exponentially
small number of offenses that are reported and accounted for.
So it's sort of akin to saying there were only four drunk people in
New Orleans in Mardi Gras this year because there were only four
arrests for public intoxication, and it's not a good representation of what's
actually going on out there. So to say it without the qualifier that,
hey, this is a gross underestimate, but you know, so far, this is what
we've been able to find, I think, is misleading and very, very
dangerous."

at pages 22-23. *See also* K. London, M. Bruck, S. J. Ceci & D. W. Shuman, *Disclosure of Child
Sexual Abuse: What Does the Research Tell Us About the Ways Children Tell?*, 11
PSYCHOLOGY, PUB. POL'Y & L. 1, 194-226 (American Psychological Association, 2005)(finding
in a study of adult retrospective victim studies about child sex abuse, approximately 60 – 70% of
adults sexually abused as children did not recall disclosing the abuse during childhood); *See also*
D. W. Smith, E. J. Letourneau, B. E. Saunders, D. G. Kilkpatrick, H. S. Resnick & C. L. Best,
*Delay in Disclosure of Childhood Rape: Results from a National Survey*, 24 CHILD ABUSE &
NEGLECT 2, 273-87 (2000)(the results of the study found that only 12% of child rape victims'
assaults were reported to law enforcement authorities.).  As such, the fact that the Defendant was
not arrested between 2017 and the present time, given the ways in which these types of crimes
are committed and the reluctance and inability of the victims to disclose, should be given less
weight, given the nature of the offense he is currently charged with.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

As detailed above, the Sexual Exploitation of Children, including the collection,
possession, transportation and distribution of child sexual abuse material presents a serious

danger to the community, which results in severe mental, emotional, and physical trauma to the

countless number of children who are victimized by offenders like the Defendant and others with

a demonstrated sexual interest in children.  Individuals, like the Defendant, who are consumers

of this material, furthers the demand for new material depicting the graphic, sexual exploitation

and abuse of defenseless children.

That child pornography offenses are serious is a fact noted by the Supreme Court. At

least as early as the landmark decision, New York v. Ferber, 458 U.S. 747 (1982), the Supreme

Court referenced numerous research materials detailing the harm to children as a result of the

production and trafficking of child pornography.

> "[P]ornography poses an even greater threat to the child victim than does
> sexual abuse or prostitution. Because the child's actions are reduced to a
> recording, the pornography may haunt him in future years, long after the
> original misdeed took place. A child who has posed for a camera must go
> through life knowing that the recording is circulating within the mass distribution
> system for child pornography."

 Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest

L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the

tension of keeping the act secret that seem to have the most profound emotional repercussions");

Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable

Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The

victim's knowledge of publication of the visual material increases the emotional and psychic

harm suffered by the child"). 458 U.S. 758, n.9.

Moreover, as the Eastern District of New York has found:

> ...the issue is not only defendant's potential
> abuse of children and his interaction with children
> if on bail, but also his ability, if he is released on bail, to attempt to possess additional
> child pornography, or to communicate and interact with (via email, internet, or phone)
> others involved in the possession, sale, and distribution of child pornography or other

sexual abuse of children, which would also create a clear danger by facilitating the
criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006).  The *Reiner* court further

found that there were no conditions in that case that could reasonably assure the safety of the

community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..."

Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008)

(S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of

various devices and stating "[t]he Court finds that the evidence clearly and convincingly

establishes that, confined to his home and electronically monitored, defendant would not be

prevented from obtaining the means to access the internet and attempting again to obtain child

pornography and in this poses a danger to children and the community"); *United States v. Doyle,*

2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering

that pornographic images of children are widely available on the internet and can be easily

accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

As detailed above, this Defendant was able to commit his crimes using a variety of hand-

held devices and the Internet, in secrecy, for years.  Should he be released, given the ease in

which a hand-held device can be obtained and the universal access to and availability of the

internet, there is nothing to assure this court that the Defendant won't continue to commit these

types of criminal offenses with impunity.  Home confinement, even in the presence of a third-

party custodian, is not sufficient to alleviate the danger this offender poses to the community

when the Court considers how this defendant committed the offenses he is charged with.  Here,

this offender has been accessing and storing images sexualizing children, and depicting their

abuse, on digital devices he kept in a home where his wife lived. He did so using internet capable

devices that are mobile, widely available, and difficult to detect.  Furthermore, the Defendant

committed his crimes all while he was having daily contact and living with his wife – the proposed third-party custodian, who presumably had no knowledge of what the Defendant was doing.  For these reasons, it is clear that that the Defendant poses a significant danger to the community and, given this risk, the Court should impose electronic monitoring, deny him access to any electronic devices that have Internet capability, and impose the conditions of release as recommended by Pretrial Services.

## **CONCLUSION**

For all of the reasons set forth above, the Court should deny the Defendant's request for a Modification of his Conditions of Release.

Respectfully submitted,

MICHAEL SHERWIN
Acting United States Attorney
N.Y. Bar No. 4444188


 /s/  *Amy E. Larson*
Amy E. Larson, N.Y. Bar Number 4108221
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-7863
Email: Amy.Larson2@usdoj.gov